IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| SHEILA R. J.,[1] § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> ANDREW SAUL, § <br> Commissioner of Social Security, § <br> § <br> Defendant. § | Civil Action No. 6:19-cv-00053-H-BU |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Sheila R. J. seeks judicial review of a final adverse decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the Commissioner's decision should be reversed and remanded for reconsideration.

I. BACKGROUND

Plaintiff alleges that she is disabled due to a variety of ailments, including fibromyalgia, chronic pain syndrome, attention deficit hyperactivity disorder ("ADHD"), depression, and anxiety. After her application for disability insurance benefits under Title II of the Social Security Act was denied initially and on reconsideration, Plaintiff challenged the denial and requested a hearing before an Administrative Law Judge ("ALJ"). That hearing was held on September 8, 2017. *See* Administrative Record [Dkt. No. 14 ("Tr.") at 105].

At the time of the hearing, Plaintiff was 46 years old. Tr. 110. She is a high school graduate and attended college for two years. *Id*. Plaintiff has past work experience as an assistant restaurant

---

[1] Due to concerns regarding the privacy of sensitive personal information available to the public through opinions in Social Security cases, Plaintiff is identified only by first name and last initial.

1

manager, nursing assistant, and held an unspecified position with the United Parcel Service ("UPS"). Tr. 110–11.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits. *See* Tr. 10–31 (ALJ Decision). At step one of the analysis,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2014, Plaintiff's alleged disability onset date. Tr. 15. At step two, the ALJ found that Plaintiff had the "severe" impairments of mixed anxiety depressive disorder, ADHD, and somatoform disorder.[3] *Id*. At step three, the ALJ determined that none of Plaintiff's impairments or combination of impairments met or equaled the severity of one of the impairments listed in the Social Security regulations. Tr. 19. The ALJ further determined at step three that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work with no physical limitations but would be limited to unskilled work. Tr. 20. At step four, the ALJ found that Plaintiff could not return to her past relevant employment. Tr. 24. At step five, the ALJ considered Plaintiff's age, education, and RFC in conjunction with the Medical-Vocational Guidelines ("Grids") and found her capable of performing work that existed in significant numbers in the national economy. Tr. 24. Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, for the period in question. Tr. 25.

Plaintiff appealed the ALJ's decision to the Appeals Council. The Council affirmed. Plaintiff then timely filed this action in federal district court. Plaintiff contends that the hearing decision is not supported by substantial evidence and results from reversible legal error. Specifically, Plaintiff contends that: (1) the ALJ's step five decision was not supported by

---

[2] As discussed further below, the Commissioner employs a five-step analysis in determining whether claimants are disabled under the Social Security Act.
[3] Generally, somatoform disorders are mental disorders in which symptoms of physical injuries or illnesses exist for no apparent reason.

2

substantial evidence because the ALJ erred in relying exclusively on the Grids; (2) the RFC was not supported by substantial evidence because the ALJ improperly rejected the opinion of a treating physician; and (3) the RFC was not supported by substantial evidence because the ALJ rejected the only medical opinion of record that addressed the functional impact of Plaintiff's mental impairments.

For the reasons below, the hearing decision should be reversed and this case remanded for additional proceedings.

## II. LEGAL STANDARDS

Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards were applied to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). While a reviewing court must scrutinize the administrative record to ascertain whether substantial evidence supports the Commissioner's findings, it may not reweigh the evidence, try issues *de novo*, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citing 42 U.S. § 405(g)). A reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

To be entitled to Social Security benefits, a claimant must show that he is disabled within the meaning of the Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

In evaluating a disability claim, the Commissioner has promulgated a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the Social Security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *See* 20 C.F.R. § 404.1520; *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. Once the claimant satisfies his or her initial burden, the burden shifts to the Commissioner at step five to show that there is other gainful employment in the national economy that claimant is capable of performing. *Greenspan*, 38 F.3d at 236. If the Commissioner shows that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557 (citing *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989)

(per curiam); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)). If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id*. However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728–29 (5th Cir. 1996).

### III. ANALYSIS

Plaintiff argues that the ALJ's step five decision was not supported by substantial evidence because the ALJ erred in relying exclusively on the Grids for that determination. She additionally argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ improperly rejected the opinion of a treating physician and the only medical opinion of record that addressed the functional impact of Plaintiff's mental impairments.

The undersigned finds that Plaintiff's first point of error has merit and remand is required on that basis alone. Accordingly, the Court need not address Plaintiff's latter points and resolve whether the ALJ's RFC determination was supported by substantial evidence.

A. <u>Use of the Medical Vocational Guidelines in Disability Determinations</u>

Plaintiff argues that the ALJ erred at step five by improperly relying solely on the Grids to find that there were jobs in significant numbers in the national economy that Plaintiff could perform. *See* Dkt. No. 16 at 12–17.

To be considered disabled, a claimant must have a severe impairment that makes her unable to perform her previous work or any other substantial gainful activity existing in the national

economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1505(a). "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant is] able to meet with [her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b). As explained above, the Commissioner has the burden at step five to show that gainful employment exists for a claimant.

In demonstrating that gainful employment exists, an ALJ may rely on the testimony of a Vocational Expert ("VE") facilitated though the posing of hypothetical questions or other similar evidence, or on the agency's Medical-Vocational Guidelines, otherwise known as the "Grids." *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); 20 C.F.R. Pt. 404, Subpt. P, App. 2. The Grids contain multiple tables accounting for work at various exertion levels (sedentary, light, medium, heavy, or very heavy) that predict a disability determination based on the age, education, and previous work experience of the claimant. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.

"Use of the 'Grid Rules' is appropriate when it is established that a claimant suffers only from exertional impairments, or that the claimant's non-exertional impairments do not significantly affect his residual functional capacity." *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999).[4] "If, however, the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert to establish that such jobs exist in the economy." *Newton*, 209 F.3d at 458 (citing *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987)). The Grids "do not direct factual conclusions of disabled or

---

[4] The Social Security regulations distinguish between exertional and nonexertional limitations. "Limitations are classified as exertional if they affect [the claimant's] ability to meet the strength demands of jobs." 20 CFR § 404.1569a. All other impairments are nonexertional. *See* Social Security Ruling (SSR) 96-9P (1996), 1996 WL 374185, at *5 ("[A] nonexertional limitation is an *impairment-caused* limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling. Environmental restrictions are also considered to be nonexertional.").

not disabled for individuals with solely nonexertional impairments." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(1).

But even if a claimant's nonexertional impairments preclude sole reliance on the Grids for rendering a conclusion, they "may nevertheless be consulted as a 'framework' for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contradicted by the nonexertional limitations." *Moore v. Social Sec. Admin.*, 153 F. App'x 945, 947 (5th Cir. 2005) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2) (2005)). "If the applicable rule directs a finding that plaintiff is not disabled, however, the Commissioner must consider nonexertional limitations and utilize the testimony of a vocational expert." *Jones v. Colvin*, No. 3:15-CV-01933-BH, 2016 WL 5085972, at *9 (N.D. Tex. Sept. 20, 2016) (punctuation and citation omitted); *see also Gonzalez v. Astrue*, No. M-09-210, 2013 WL 1345298, at *9 n.14 (S.D. Tex. Mar. 29, 2013) ("Where the claimant's characteristics do not 'coincide exactly' with a Grid rule, the ALJ should introduce expert vocational testimony to further assist him in his 'Grids framework' guided analysis.") (citing *Lawler v. Heckler*, 761 F.2d 195, 197–98 (5th Cir. 1985)).

In this case, Plaintiff testified that fibromyalgia was the main medical condition interfering with her ability to work, that she had suffered from this condition for 16 years, and required prescription drugs to manage the pain. Tr. 112. She also testified that she experienced anxiety, ADHD, panic attacks, and other issues with her legs and back. Tr. 111–23. The panic attacks and social anxiety were reportedly the cause of Plaintiff losing her most recent job. Tr. 111, 114. The administrative record includes Plaintiff's extensive medical history, showing that she sought care from a series of providers, primarily to address her pain.

In making the disability determination, the ALJ considered whether any of Plaintiff's alleged impairments were "severe" as defined under the Social Security regulations. *See* 20 C.F.R.

§ 404.1522. Under Fifth Circuit precedent, the finding that an impairment is severe at step two is a *de minimis* requirement, and "[a]n impairment can be considered as *not* severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *See Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (emphasis added) (citations omitted). Applying the *Stone* standard, the ALJ found that only Plaintiff's mixed anxiety depressive disorder, ADHD, and somatoform disorder limited her ability to work and were therefore severe impairments. Plaintiff's other impairments, including her status-post left knee surgery, gastroesophageal reflux disease, spine disorder, and fibromyalgia, were deemed not severe because the "the longitudinal evidence did not indicate these impairments caused more than minimal functional limitations." Tr. 16.

At step three, the ALJ found that Plaintiff's severe impairments did not meet or equal an impairment listed in the Social Security regulations. Because Plaintiff's impairments were mental, the ALJ analyzed these impairments under sections 12.04, 12.06, and 12.07 of the listings, which each contain the so-called "paragraph B" criteria used to assess the severity of mental disorders. *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00; *see also* 20 C.F.R. § 404.1520a.

Using the paragraph B criteria, the ALJ assessed the severity of Plaintiff's mental disorders across four broad areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *See id*. Under this framework, the ALJ found that Plaintiff had a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; and a mild limitation in adapting and managing oneself. Tr. 19–20. But the ALJ found that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace. Tr. 19.

Despite finding that Plaintiff's impairments did not meet or equal one of the listed impairments, the ALJ found these impairments affected Plaintiff's RFC such that she would be limited to unskilled work. Tr. 20–24. Specifically, in assessing Plaintiff's RFC, the ALJ found that "[s]he has no limits physically and can perform the full range of work, except she is limited to unskilled work." Tr. 20. In making this finding, the ALJ noted "evidence of routinely normal physical and mental examinations, regular gym and yoga attendance, conservative psychiatric treatment, and independent self-care." Tr. 23. Finding inconsistencies in her requests for treatment, medication usage, and claims regarding her illnesses, the ALJ concluded the "evidence did not provide a cohesive story of disability in this case." *Id*. Nevertheless, the ALJ found a restriction to unskilled work was warranted, in part, because "the evidence did show longitudinal features of somatoform disorder, including excessive and disproportionate levels of distress." *Id*. The ALJ further stipulated that he "accommodated the claimant's mixed anxiety depressive disorder, ADHD, and somatoform disorder with the limitation of unskilled work." Tr. 24.

At step five, the ALJ found that Plaintiff's "ability to work has been compromised by her nonexertional limitations. However, because she can perform the full range of work physically and the full range of unskilled work, a finding of 'not disabled' is therefore appropriate under section 204.00 [of the Grids]." Tr. 24. In reaching this conclusion, the ALJ did not rely on VE testimony or any other evidence.

B.  The ALJ's Error in Applying the Grids

Plaintiff argues that the ALJ erred by solely relying on the Grids at step five because Plaintiff's impairments were nonexertional and because the step two finding of severity necessarily implied that these impairments had a significant impact on Plaintiff's RFC. Dkt. No. 16 at 12–17.

9

Because of this legal error and the corollary failure to elicit VE testimony, Plaintiff contends that the ALJ's step five determination was made without substantial evidence. *Id*. at 17.

In response, the Commissioner argues that reliance on the Grids was proper because "the ALJ explained why Plaintiff's nonexertional impairments did not significantly affect her residual functional capacity." Dkt. No. 17 at 13. The Commissioner argues that Plaintiff overstates the significance of the step two finding that the impairments were severe, since whether an impairment is severe is a *de minimis* requirement and need not preclude reliance on the Grids at step five. *Id*. at 9–13.

As previously noted, the law in this circuit requires that if "the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert to establish that such jobs exist in the economy." *Newton*, 209 F.3d at 458 (citing *Fraga*, 810 F.2d at 1304). This rule however, "does not apply when the claimant's nonexertional impairments 'do not significantly affect [the claimant's] residual functional capacity.'" *January v. Astrue*, 400 F. App'x 929, 931 (5th Cir. 2010) (unpublished) (quoting *Fraga*, 810 F.2d at 1304). Admittedly, there is a debate among lower courts over whether an ALJ's finding at step two that a nonexertional impairment is "severe" necessarily entails a conclusion that the impairment significantly affects the RFC at step five. *See Herrmann v. Comm'r of Soc. Sec.*, 317 F.Supp.3d 900 (N.D. Miss. 2018) (discussing the ambiguity in the Fifth Circuit case law and finding that a severe nonexertional impairment was not significant and did not preclude reliance on the Grids where claimant was restricted to medium work); *but see Pedigo v. Astrue*, No. 4:09-CV-2513, 2010 WL 3808687, at *4 (S.D. Tex. Sept. 27, 2010) (collecting cases and concluding that "[t]he Fifth Circuit also has held consistently that a Step Two

finding that a nonexertional mental impairment is 'severe' precludes an ALJ from relying solely upon the Grid Rules when making the Step Five determination.").

Here, the ALJ found that Plaintiff suffered from only severe nonexertional impairments and could physically perform the full range of work, albeit unskilled. The Commissioner argues that the Court should not adopt a *per se* rule that a finding of severity with respect to the nonexertional impairments at step two necessitates a finding of significance with respect to the RFC at step five. But courts in this District have expressly rejected arguments made by the Commissioner on this point. *See Milligan v. Colvin,* 2013 WL 5345842, at *5 (N.D. Tex. Sept. 24, 2013); *Jones*, 2016 WL 5085972, at *9. In *Milligan*, where the plaintiff's impairments were "mainly mental," the court found that "[e]ither plaintiff's nonexertional impairments do significantly limit her (as determined in Step Two), or they do not significantly limit her (as determined in Step Five)." 2013 WL 5345842, at *5. The *Milligan* court rejected the Commissioner's arguments that merely accounting for a claimant's nonexertional mental limitations under the broad "unskilled occupational base" was adequate or that "the Grids establish there are sufficient numbers of unskilled jobs available" because they encompass "an occupational base limited to unskilled jobs." *Id*. at *6.

In *Jones*, the court similarly rejected the Commissioner's argument that the ALJ was permitted to rely on the Grids at step five after he had determined at step two that the claimant suffered from the severe nonexertional mental impairments of a learning disability and a mood disorder. 2016 WL 5085972, at *9. The court found that the ALJ's summary conclusion that the "nonexertional limitations have little or no effect on the occupational base of unskilled work" was in error and that "[t]he ALJ was required to make an individualized step five determination with the assistance of VE testimony or other similar evidence." *Id.* (citations omitted).

In this case, the ALJ found at step two that Plaintiff's nonexertional mental limitations were severe, and more generally found that her "ability to work has been compromised by her nonexertional limitations." Plaintiff's severe nonexertional limitations of mixed anxiety depressive disorder, ADHD, and somatoform disorder were the only impairments at issue. Accordingly, in basing his step five findings solely on the Grids "because [Plaintiff] can perform the full range of work physically and the full range of unskilled work," the ALJ erred. *See Loza v. Apfel*, 219 F.3d 378, 399 (5th Cir. 2000); *see also Hearne v. Barnhart*, 111 F. App'x 256, 257–58 (5th Cir. 2004) (finding error where the ALJ relied solely on the Grids at step five when he found the claimant's depression to be a severe impairment under step two); *see also Rodriguez v. Barnhart*, No. SA-05-CA-1203, 2006 WL 3779777, at *2 (W.D. Tex. Nov. 6, 2006) ("If the applicable rule directs a finding that plaintiff is not disabled, [however,] the Commissioner [must] consider nonexertional limitations and utilize the testimony of a vocational expert.").

Because the ALJ committed a legal error in relying solely on the Grids, his step five determination regarding the availability of gainful employment was made without substantial evidence. The ALJ was required to utilize the assistance of VE testimony or other similar evidence in making an individualized step five determination for Plaintiff. *See Wingo v. Bowen*, 852 F.2d 827, 831 (5th Cir. 1988) ("[T]he ALJ's mechanical application of the guidelines failed to consider the aggregate impact of [the claimant's] ailments."). Through the use of VE testimony, the ALJ could have incorporated all of the disabilities recognized by the ALJ's RFC assessment, and Plaintiff or her representative could have corrected deficiencies in the ALJ's characterization, as permitted under the law. *See Bowling* 36 F.3d at 435. Absent the VE testimony or other analogous evidence showing that Plaintiff could perform other work in the national economy, the ALJ's step five determination was not based on substantial evidence. *See Wingo*, 852 F.2d at 831 n.4 (noting

that "[i]n the absence of such testimony, the [Commissioner's] decision that the claimant can perform a job lacks the substantial evidence required by law.").

Accordingly, the ALJ's finding that Plaintiff was not disabled at step five was not reached through the application of the proper legal standard and was not supported by substantial evidence on the record.

C. Harmless Error

The Court must still determine whether error in the underlying administrative proceeding was harmless. "Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected. . . . The major policy underlying the harmless error rule is to preserve judgments and to avoid waste of time." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)) (per curiam). "[P]rocedural improprieties . . . will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Alexander v. Astrue*, 412 F. App'x 719, 722 (5th Cir. 2011); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

Here, the Court must consider whether the ALJ's error in failing to rely on VE testimony or other similar evidence in step five was harmless. *See January*, 400 F. App'x at 931–32 (applying harmless error analysis in case determining whether an ALJ's reliance on the Grids at step five was permissible where plaintiff had a nonexertional impairment and was restricted to light work).

In this case, the ALJ found that Plaintiff had mental limitations, including the severe impairments of mixed anxiety depressive disorder, ADHD, and somatoform disorder. The ALJ found that because of these impairments, Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace. The ALJ concluded that Plaintiff's "ability to work has been

13

compromised by her nonexertional limitations." But the ALJ failed to consult a VE or utilize other similar evidence to develop the record on what jobs were available in the national economy given the limitations the ALJ found Plaintiff to have. Accordingly, there is no evidence that Plaintiff's limitations have been incorporated into the jobs the ALJ found she could perform. Because of this omission, the ALJ's decision that Plaintiff could perform other work without consulting a VE or other similar evidence affected Plaintiff's substantial rights. Such an error is not harmless. *See Jones*, 2016 WL 5085972, at *9 (finding reversible error where ALJ had determined that the claimant had severe nonexertional mental impairments and failed to consult a VE or other evidence and relied solely on the Grids at step five).

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the hearing decision be REVERSED and this case REMANDED to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific or sufficient. Failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court,

except on grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

  IT IS SO ORDERED this 1st day of February, 2021.

_____<br>
JOHN R. PARKER<br>
UNITED STATES MAGISTRATE JUDGE